B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| PLAINTIFFS ~~Perfumes~~ Fragrances Instyle LLC<br>Harry Harjani Prose Nicholas Fiorillo Prose | DEFENDANTS<br>LU Mark Russo GGP Providence Place LLC<br>Estate GGP Providence LLC John Dorsey<br>Michael Crane Jillette Collins Michael Stern<br>Joe Patino |
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>Pro Se | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor ☒ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

CAUSE OF ACTION (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

28 USC 1334, 157 (B)(2)(A)(O) (C) Complaint
11 USC 362 A 362 K 105 A 42 USC 1981 1983 Rico 18 USC 1961
11 USC 553

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
- ☒ 11-Recovery of money/property - §542 turnover of property
- ☒ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☒ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(f) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☑ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☑ Check if a jury trial is demanded in complaint | Demand $ 122 million |

Other Relief Sought

Jury Trial

B1040 (FORM 1040) (12/24)

<table>
<tr><th colspan="4">BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES</th></tr>
<tr><td colspan="2">NAME OF DEBTOR<br>Instyle Fragrances LLC</td><td colspan="2">BANKRUPTCY CASE NO.<br>1:26-bk-10929</td></tr>
<tr><td colspan="2">DISTRICT IN WHICH CASE IS PENDING<br>Providence RI</td><td>DIVISION OFFICE</td><td>NAME OF JUDGE<br>Dorsey</td></tr>
<tr><th colspan="4">RELATED ADVERSARY PROCEEDING (IF ANY)</th></tr>
<tr><td>PLAINTIFF<br>InStyle Perfumes LLC<br>Harry Harjani<br>Nicholas Fiorillo</td><td colspan="2">DEFENDANT John Dorsey Michael Crane<br>W Mark Russo Juliette Cairns<br>GGP Providence Place LLC<br>Estate GGP Providence LLC. Michael Stern<br>Joe Perkins</td><td>ADVERSARY PROCEEDING NO.</td></tr>
<tr><td colspan="2">DISTRICT IN WHICH ADVERSARY IS PENDING</td><td>DIVISION OFFICE</td><td>NAME OF JUDGE</td></tr>
<tr><td colspan="4">SIGNATURE OF ATTORNEY (OR PLAINTIFF)</td></tr>
<tr><td colspan="2">DATE<br>10/19/26</td><td colspan="2">PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Hitesh HARJANI (HARRY)</td></tr>
</table>

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs and Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

OCT-19 '26 PM03:31

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

In re:
INSTYLE FRAGRANCES LLC,
Debtor.
10929
Chapter 11

Case No. 1:26-bk-

INSTYLE FRAGRANCES LLC,
HITESH (HARRY) HARJANI, and
NICHOLAS FIORILLO,
Plaintiffs,

v.

W. MARK RUSSO, as Permanent Receiver of
GGP-PROVIDENCE PLACE LLC, and
ESTATE OF GGP-PROVIDENCE PLACE LLC,
W. MARK RUSSO, JOHN DORSEY
Individually and as Permanent Receivers),
MICHAEL D. CRANE, ESQ.,
JULIET COLLINS, BRIAN STERN,
WALTER GORMAN (Retired/Recalled),
JOSEPH PAOLINO, JR., PAOLINO PROPERTIES
(ALTER EGO HOLDING CO's)
STEPHEN CONGEL,
PYRAMID MANAGEMENT GROUP,
ADLER POLLOCK & SHEEHAN P.C.,
BROOKFIELD PROPERTIES, GGP-PROVIDENCE,
GGP NATICK WEST L.L.C.,
and PERFUMANIA, John & Jane Does (1-24),
Defendants.

**VERIFIED ADVERSARIAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, ENFORCEMENT OF THE AUTOMATIC STAY, DAMAGES FOR WILLFUL STAY VIOLATIONS, VACATION OF VOID ORDERS, AND $122,000,000 TRANS-JURISDICTIONAL RICO AND CIVIL RIGHTS CLAIMS AGAINST THE PROVIDENCE PLACE PLUNDER DOME AND NEW ENGLAND MUNICIPAL MAFIA RACKETEERS**

(Special Appearance Only — Full Reservation of Rights Under 28 U.S.C. § 1446(d) and 11 U.S.C. § 362)

Plaintiffs Instyle Fragrances LLC (Debtor), Hitesh (Harry) Harjani, and Nicholas Fiorillo, appearing specially and solely as a professional courtesy with full reservation of all rights, hereby file this Complaint in the above-captioned adversary proceeding. This filing does not constitute a voluntary submission to jurisdiction on the merits beyond the Bankruptcy Court's core jurisdiction over the automatic stay and property of the estate, does not waive the absolute statutory stay under 28 U.S.C. § 1446(d), and does not acknowledge any power of any state court to proceed while the controversy remains pending before the United States Court of Appeals for the First Circuit (related to D. Mass. Case No. 1:26-cv-40217-ADB) or while the automatic stay under 11 U.S.C. § 362 is in effect. Plaintiffs incorporate by reference their October 15, 2026 District Court filings (including the Omnibus Notice of Appeal and DC-52 forms stamped by the Clerk), all federal removal and First Circuit papers, the full factual nucleus of the First Amended Verified Complaint pending in the United States District Court for the District of Massachusetts (Case No. 1:25-cv-13806), and the Chapter 11 petition filed October 16, 2026 in Case No. 1:26-bk-10929.

## I. WEAPONIZED LAWFARE ATTACKS AGAINST CIVIL RIGHTS OF INTER RACIAL IMMIGRANT OWNED SMALL BUSINESS BY THE PROVIDENCE PLACE PLUNDER DOME RACKETEERS (PPPDR) RICO ENTERPRISE AND THE NEW ENGLAND MUNICIPAL MAFIA CO-CONPSIRATORS AND RELATED EXECUTIVE ORDERS

This is not a simple lease dispute. This is the cold-blooded, state-sponsored murder of the American Dream inside a coordinated corridor of corrupt Massachusetts and Rhode Island courtrooms administered by a trans-jurisdictional racketeering enterprise known as the New England Municipal Mafia (NEMM). While masquerading as a routine 7-Day commercial non-payment summary eviction under R.I. Gen. Laws § 34-18.1-9, this file is an illegal, bad-faith, weaponized lawfare attack to unlawfully steal the debtors 20 year business and good will from their flagship location. It was built to silence National Whistleblowers and clear out Instyle Perfumes to advance a rigged, pre-arranged $133 million insider liquidation of the $500 million Providence Place Mall infrastructure asset and shuttered the regional Instyle Fragrance Boutiques, paving the way for the Defendant's "insider" competitor Perfumania.

This is a definitive legal stand against weaponized lawfare coordinated in the secret courts of Massachusetts and Rhode Island through deepfake receiverships, bait-and-switch evictions, and the outright theft of small businesses by weaponized corporate interests and their complicit fiduciaries for the benefit of Providence Place Mall Owners and their Perfumania co-conspirators.

Plaintiffs Hitesh (Harry) Harjani and Nicholas Fiorillo, appearing pro se on behalf of themselves and by lawful assignment of all individual and corporate claims for the debtor and Instyle Fragrances-Perfumes d/b/a Instyle Runway, submit this extensive Complaint to completely block, crush, and defeat every fraudulent pretense raised against them. Plaintiffs Harry Harjani—an immigrant who built a luxury fragrance retail chain inside GGP-Brookfield properties—and his interracial family have been subjected to a predatory "bait-and-switch" eviction racket for the benifit of the defendants.

After being wooed with long-term, below-market leases across regional retail centers in Providence and Natick GGP Malls, Defendants launch a coordinated assault to break the leases, padlock locations, chain commercial doors, withhold site access, and destroy small enterprises for profit. In Natick, they covertly evicted Instyle to install competitor Perfume Mania. Parallel to this, in Providence, Receiver Russo, Attorney John Dorsey, and co-conspirators unlawfully relocated and forced Instyle out of its prime 3,700 sq. ft. inline retail storefront at the start of the receivership and have continued a series of "deep fake" corporate terrorist type schemes to run the debtors out of the wall any which way and loose.

They bait-and-switched the tenant into Unit 4300—a defective 350 sq. ft. trash room and broom closet suffering from unmitigated flood damages and stollen products and broken infrastructure while simultaneously generating deep-fake ledger defaults and rental credit offset of $100,000. When the family fought back, the enterprise weaponized the state courts. Presiding Justice Brian Stern in the Rhode Island Superior Court equity calendar partnered with Receiver Russo, John Dorsey, and Adler Pollock & Sheehan P.C. to convert public courtrooms into kangaroo tribunals.

They systematically deployed "block and mute" setups on remote WebEx and Zoom platforms. They suppressed, unconstitutionally "trash-canned," and scrubbed over 24 emergency motions from public tracking indexes to conceal a $20,000,000 bid-rigging scheme pre-cut during private dinners at Rao's Restaurant and the Harvard Club. When exposed, Judge Stern read from a pre-drafted script to launch an interim AI sanctions attack crafted by Defendant Russo. He mandated an impossible in-person hearing format for a litigant under federal pretrial GPS travel restrictions to manufacture a technical default.

This summary process eviction is the final, desperate stage of that conspiracy. It seeks to bypass federal question jurisdiction (28 U.S.C. § 1331) and civil rights removals (28 U.S.C. § 1443) through an expedited state court railroad. These coordinated attacks constitute weaponized lawfare directed against civil rights protections, including the equal right to make and enforce contracts under 42 U.S.C. § 1981, due process under the Fourteenth Amendment, and protection from retaliatory state action under 42 U.S.C. § 1983. The pattern of deep-fake orders, ghost hearings, forged snap remands, and post-removal railroads further violates the statutory stay of 28 U.S.C. § 1446(d) and the automatic stay of 11 U.S.C. § 362(a).

**Plaintiffs seek full damages of $122,000,000 for the resulting business decimation, holiday sales destruction, civil rights trauma, and operational destruction across the Paolino Properties, Pyramid Properties, GGP-Providence and GGP-Natick properties and the defendants individually.**

## II. JURISDICTION AND NATURE OF THE ACTION

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (G), and (O).

1. All post-removal District Court action is void ab initio under 28 U.S.C. § 1446(d). The October 1, 2026 snap remand does not revive state jurisdiction while Plaintiffs' appeal of that remand is pending in the First Circuit under the § 1447(d) exception for § 1443 civil-rights removals. See BP P.L.C. v. Mayor & City Council of Baltimore, 593 U.S. 230 (2021); Steamship Co. v. Tugman, 106 U.S. 118 (1882); Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423 (1974).

2. The automatic stay under 11 U.S.C. § 362(a) independently bars any act to obtain possession of property of the estate, enforce pre-petition judgments, or collect pre-petition claims.
3. Plaintiffs demand a trial by jury of all issues triable of right by a jury to the extent permitted.
4. This action incorporates Plaintiffs' $122,000,000 trans-jurisdictional RICO and civil rights claims, which arise from the same factual nucleus as the District Court eviction proceedings and the related federal actions.

III. PARTIES

5. Plaintiff Instyle Fragrances LLC is a minority-owned retail business that has operated at Providence Place Mall for approximately twenty years (Units 7518 and 4300).
6. Plaintiff Hitesh (Harry) Harjani is an individual who built a luxury fragrance retail chain and appears pro se individually and on behalf of Instyle Fragrances LLC.
7. Plaintiff Nicholas Fiorillo appears as pro se assignee and real party in interest.
8. Defendants W. Mark Russo and John Dorsey where and/or still are acting as the Permanent Receiver of GGP-Providence Place LLC and the "masterminds" sued in that capacity and individually, as the unlawful eviction and conspiracy to unlawfully evict the Debtors at the hands of the Russo Lawfirm have been ongoing and continuing up and until this day.
9. Defendant Walter Gorman is a retired Associate Judge of the Rhode Island District Court (retired March 2008) who was recalled and deployed onto this docket post-removal.
10. Defendant Michael D. Crane, Esq., is counsel for the Receiver and is alleged to have participated in the post-removal proceedings, the broken continuance agreement, and the ghost hearings.
11. Defendant Juliet Collins, of Russo Law is alleged to have participated in the preparation or presentation of deep-fake or forged orders and related lawfare tactics.
12. Defendant Perfumania (and related entities) is alleged to be the intended beneficiary of the coordinated effort to clear Plaintiffs from the mall space.
13. The remaining Defendants are the Estate of GGP-Providence Place LLC, Joseph Paolino, Jr., Stephen Congel, Pyramid Management Group, Adler Pollock & Sheehan P.C., Brookfield Properties, GGP-Natick West L.L.C.,and Presiding Justice Brian Stern, who are alleged to have participated in the coordinated conduct described herein.

14. John and Jane Doe(s) Co-Conspirators known and unknown to the Plaintiffs at this time.

## IV. EXTENSIVE FACTUAL ALLEGATIONS — TIMELINE OF SECRET COURTS WEAPONIZED LAWFARE IN VIOLATIONS OF EXECUTIVE ORDER OF PRESIDENT TRUMP ENDING WEAPONIZATION OF THE COURTS AND 18 USC RICO

14. On or about October 29, 2024 Receivers W. Mark Russo and Attorney John Dorsey and began "masterminding" a plan to unlawful "run the debtor out of the mall" for the benifit of Defendant Paolino, Pyramid and Perfumania through a series of deep fake relocation/constructive eviction, intimidation tactics and gangstalking schemes that had all failed. The group then "doubled down" on or about July 20th 2026 after numerous failed attempts to "bait and switch" the debtor with promises of new leases and exclusive rights to sell perfume in the mall always to be changed at the last minute, with a covert "release of all claims" clause and 30 day termination trigger, it was all a rouse set up by the defendants to trick Debtors into a release of their $100 million in claims. Russo initiated expedited 7-day summary commercial eviction actions in the District Court (File Nos. 6CA-2026-10388 and 6CA-2026-10389) seeking possession and alleged back rent for Units 7518 and 4300. Plaintiffs deny each and every allegation, ledger claim, and factual assertion contained in the 7-Day Eviction Complaint, and demand strict proof thereof at trial. Plaintiffs deny that any back rent or delinquency of $72,275.00 is due or owing to the Plaintiff, the Receiver, or the Estate.

15. Plaintiffs assert that their true rental balance is $0.00. Rental commencement triggers under Lease Provisions 1.05(b) and 1.06(b) never occurred due to the landlord's active facility sabotage, plan rejections, and constructive lockouts. Furthermore, the Receivership Estate has failed to apply lease credits in excess of $350,000 when all told, between the GGP-Providence and GGP-Natick properties, that Defendants have failed to apply in valid tenant operational and lease hold credits, and relocation reimbursements, which completely sweeps away any alleged non-payment, a crystal clear undisputed amount of rental credits due tenants at both malls that has yet to be paid.

16. On or about July 26–30, 2026, Plaintiffs filed formal Notices of Federal Removal under 28 U.S.C. §§ 1441, 1443, and 1446. On September 8, 2026 at 4:44 P.M., Plaintiffs filed an renewed Notice of Federal Removal of the eviction actions. By operation of 28 U.S.C. § 1446(d), the state court was divested of jurisdiction and "shall proceed no further." Once notice is given to the state court clerk, the state tribunal loses all subject-matter jurisdiction and "SHALL PROCEED NO FURTHER." This statutory protection automatically stays all related clearance, eviction, and summary process proceedings, rendering any subsequent state court hearing or order void as a matter of law.

17. On or about August 19, 2026, the Receiver completed the sale and closing of the Providence Place Mall asset to Joseph Paolino (Paolino Properties) and Pyramid Management Group. Under the Rhode Island Commercial Receivership Act (R.I. Gen. Laws ch. 10-21) and R.I. Gen. Laws § 34-18-11 (attornment), title and the landlord's possessory interest passed at closing. The Receiver is no longer the landlord and lacks standing to pursue offensive possessory relief or to collect pre-sale amounts. New owners step into the shoes of the landlord only prospectively.

18. On August 17–18, 2026, Attorney Michael D. Crane issued a written confirmation that the hearing would be continued to September 9, 2026, and that full papers would be mailed. Plaintiffs relied on this written stipulation by an officer of the court, stood down witnesses, and did not appear for the prior date. Hours later, counsel attempted to repudiate the continuance, constituting estoppel and a structural trial by ambush. At 1:22 PM on a Saturday, an individual wearing a uniform closely resembling a United States Postal Service worker bypassed the secure, official three-stories-below central mailroom of the Providence Place Mall, entered the retail floor promenade, and handed an incomplete notice packet directly to hourly retail floor staff, entirely withholding the substantive motion briefs, legal memoranda, and underlying exhibits.

19. On September 9, 2026, Retired Associate Judge Walter Gorman (retired March 2008) was deployed onto the stayed docket. In an empty courtroom post-removal, he entered a

"Hearing Concluded" markup on a Motion to Dismiss Counterclaims, ignoring the federal removal notice and the August 18, 2026 written continuance agreement. Public records confirm Gorman's retirement in March 2008 and the limited scope of any prior recall work. His associations with Receiver Russo and Joseph Paolino create an objective conflict.

20. The September 9 session was extrajudicial and void under 28 U.S.C. § 1446(d). The institutional lawfare expanded exponentially on Wednesday, September 9, 2026. Instead of the case being handled through standard administrative channels, the Judiciary brought Associate Judge Walter Gorman out of retirement to preside over the stayed docket, who is a personal friend and business associate of both W. Mark Russo and Joseph Paolino, the landlords of the Providence Place Mall.

21. On October 13, 2026, Plaintiffs arrived for the scheduled 9:00 a.m. eviction hearing, filed papers with the Clerk, directed documents to the Judge, and waited. Despite their physical presence and knowledge thereof by court personnel, Attorney Crane, and the Judge, a covert "ghost" hearing was conducted. Default judgments were entered without notice, without evidence production, and without opportunity to be heard: 6CA-2026-10388 (Unit 7518): $12,983.88 + $145 costs = $13,128.88; Possession of Unit 7518; and 6CA-2026-10389 (Unit 4300): $94,181.81 + $145.75 costs = $94,327.56; Possession of Unit 4300. Docket entries show "Eviction Hearing (9:00 AM) … Hearing Concluded" and related motions canceled and reset "at the request of the Judge." The entries were discovered only later from clerk-provided docket snapshots. These proceedings were conducted without notice or opportunity to be heard and are void ab initio.

22. On October 15, 2026, Plaintiffs filed (in hand and electronically) in the District Court an Omnibus Notice of Appeal of all orders by Judge Gorman (including the October 13 defaults), an Ex Parte Emergency Motion for Immediate Stay of Execution, and an Ex Parte Emergency Motion to Reopen, Vacate, and Strike the October 13 Default Judgments, together with the official DC-52 Notice of Appeal forms. Those papers were stamped "Filed OCT 15 2026" by Waleada Shepard, Clerk.

23. This Notice of Appeal was filed before any purported District Court order attempting to impose a 72-hour stay conditioned on payment of over $100,000. Under R.I. Gen. Laws §§ 9-12-10 and 9-12-12, the timely claimed appeal removes the case for trial de novo and blocks subsequent District Court orders that treat the full pre-appeal judgment as the condition of any stay. Jones v. Aciz, 109 R.I. 612, 289 A.2d 44 (1972); Oaks v. District Court of the State of Rhode Island, 631 F. Supp. 538 (D.R.I. 1986).

24. Plaintiffs allege a coordinated deep-fake scheme involving forged or manufactured orders, ghost hearings, service by an individual resembling a USPS worker who bypassed the mall mailroom, and the deployment of recalled Judge Gorman, Attorney Crane, Juliet Collins, and Attorney John Dorsey to manufacture defaults while Plaintiffs were present and waiting.

25. The scheme is alleged to benefit Perfumania by clearing Plaintiffs from the space, consistent with prior events at GGP-Natick properties. Plaintiffs further allege that valid unapplied lease credits and relocation reimbursements exceed any claimed delinquency, that rental commencement triggers never occurred due to facility sabotage and constructive lockouts, and that the true balance is $0.00. Mall management personnel stated on the record that "the order came down directly from Russo to clear you out because of Instyle's threatened lawsuit… these people are ruthless."

26. On October 16, 2026, Instyle Fragrances LLC filed a voluntary petition under Chapter 11 in Case No. 1:26-bk-10929 (Honorable John A. Dorsey Jr.). The automatic stay under 11 U.S.C. § 362(a) took immediate and self-executing effect and indefinitely freezes any further action to obtain possession of Units 7518 and 4300 or property of the estate.

In Massachusetts, under Docket Number 2587SU000005, the enterprise launched an unlawful summary eviction ruse against Gatsby's Chop House and Instyle Fragrances. They issued premature default demands on December 20, 2024, from Chicago—three days before the ABCC officially approved the tenant's liquor license—to preempt construction and grand opening cycles. They leveraged political influence through Select Board Chair Kathryn Coughlin, who held non-

public, un-noticed executive meetings at 13 East Central Street in flagrant violation of Open Meeting Laws. Coughlin issued false public statements to the Natick Report claiming the "license was never issued," intentionally misleading investors, contractors, and suppliers to destroy Gatsby's funding.

To enforce this corporate greed, facility manager Jennifer Kearney chained the doors to Space No. 3009, coordinated false trespass threats with local dispatch units, and emailed the municipal health department to intentionally delay mandatory inspections. This was done to hand over all Instyle perfume locations to the landlord's principal investor and personal friend, the owner of competitor Perfumania. This exact racketeering enterprise cross-pollinates directly with the asset liquidation parameters of the $500,000,000 Providence Place Mall public infrastructure asset in Rhode Island (C.A. No. PC 2024-05826).

As documented in a verbatim broadcast recording from NBC 10 WJAR, developer Joseph Paolino, Jr. openly confessed that the $133 million acquisition was completely pre-arranged in January 2026—months before public auction parameters were established—during private dinners at Rao's in New York and the Harvard Club alongside DW Partners and the Receiver's fiduciaries. The grounds for this Complaint are compelled by a continuous, trans-jurisdictional pattern of public corruption, civil rights deprivations, and mail/wire fraud stretching from Chicago to Massachusetts and Rhode Island corporate vectors.

This enterprise unites Paolino, Pyramid, DW Capital, Brookfield Properties, GGP-Natick West L.L.C., GGP-Providence Place LLC, their individual employees, Court-Appointed Receivers W. Mark Russo and John Dorsey, and judicial officers (Gorman and Stern) in a single common purpose: to unlawfully break leases, seize private property, and strip away valuable municipal assets for preferred inside operators. Under Rhode Island commercial common law, a summary process action for non-payment is fully barred when the tenant's valid administrative and transaction-linked claims against the estate exceed the landlord's demand. Plaintiffs possess over $122,000,000.00 in documented claims arising out of fraud, asset devaluation, and operational destruction inflicted by the fiduciaries of this Estate. These superior administrative claims and the

$150,000.00 (Paolino,Pyramid,GGP-Providence) and $250,000 (GGP-Natick) in unapplied ledger credits must be applied as an equitable recoupment.

This wipes out the alleged $72,275.00 delinquency and bars the entry of a Writ of Possession. Plaintiff is barred from enforcing rent collection because the Landlord and Receiver materially breached the governing commercial lease instruments. Defendants breached Article 1 (Quiet Enjoyment) and Article 20 (Good Faith) by executing illegal door-chaining, deploying corporate asset-recovery shakedowns, and threatening criminal extrajudicial 24-hour self-help lockouts over the October 17th 2026 Weekend and strong arm extortion tactics.

They breached Article 3 (Cooperation) and Article 24 (Force Majeure) by fabricating claims of invalid insurance coverages, vague "aesthetic" design rejections and stalling permitting applications to ensure project failure. A landlord cannot demand rent for a commercial space when they have effectively "muscled," physically locked out, relocated and usurped the business and the shop's inventory, their extortionistic 24 hour eviction scheme, pay $100,000 or be locked out and put on the street, unlawful relocations, physical blockades and construction gatekeeping prevent the tenant from opening for business.

As it has been the Defendants here under Russo, the "mastermind" receiver's intent to move in Perfumania, in the exact same space, a copy cat of what GGP Natick did to Instyle Perfumes. This eviction is clearly predatory in nature with Providence Place Mall management admitting of their criminal acts of eviction stating "Harry the order came down directly from Russo to clear you out, it's because Instyle's threatened lawsuit, these people are ruthless." Under the doctrine established in O'Connell v. Walmsley, a landlord who excludes a commercial tenant from their peaceful tenancy or renders the premises unusable has committed an illegal constructive lockout.
Defendants forcibly disrupted Instyle's operations on multiple occasions, dismantled its prime 3,700 sq. ft. inline storefront unlawfully relocated them, while they were out of the country on a religious retreat and attempted to corral the business into a non-working 350 sq. ft. trash room (Unit 4300) that lacked basic infrastructure and suffered from unmitigated flood waters and rat infestation. Demanding full or escalated rent for an unusable trash room while executing physical eviction threats constitutes a severe breach that voids the landlord's summary possessory remedies.

This summary eviction case was manufactured on July 21, 2026, as a direct, retaliatory act of lawfare.

It followed Plaintiffs' public exposure of the private strategy dinners at Rao's Restaurant and the Harvard Club where former Mayor Joseph Paolino, Jr., Stephen Congel (Pyramid Management Group), and the Receiver's fiduciaries pre-cut the under-market mall transaction. It is also in retaliation for Plaintiffs' active $122M federal civil rights and racketeering lawsuits. Because Centennial Mall Management personnel explicitly confirmed on the record that "the order came down directly from Russo to clear you out because of Instyle threaten lawsuit... these people are ruthless," Plaintiff operates with unclean hands. A court of equity cannot grant possessory relief used as a tool to punish national fiduciaries and whistleblowers.

## V. CLAIMS FOR RELIEF

**Count 1 – Enforcement of the Automatic Stay and Damages for Willful Violation**
Any post-petition lockout, padlocking, seizure, or possession action violates 11 U.S.C. § 362(a) and is void ab initio. Plaintiffs are entitled to actual damages, costs, attorney's fees, and punitive damages under 11 U.S.C. §§ 362(k) and 105(a).

**Count 2 – Declaratory Relief that District Court Orders Are Void**
The October 13, 2026 default judgments and all prior post-removal orders by Judge Gorman are void ab initio under 28 U.S.C. § 1446(d) and due process.

**Count 3 – Stay of Execution and Restraint Against Constructive Eviction**
Immediate stay is required of all execution, writs of possession, sheriff lockouts, padlocking, inventory seizure, and constructive eviction at Units 7518 and 4300. Any bond must be limited to ongoing use and occupancy at the existing lease rates ($1,222/month for Unit 7518 and $1,800/month for Unit 4300) accruing after August 19, 2026. The timely Notice of Appeal filed before any purported 72-hour stay conditioned on over $100,000 blocks enforcement of that order. R.I. Gen. Laws § 9-25-4.

**Count 4 – Vacation and Strike of Void Orders; Post-Sale Standing**

The Receiver lacks standing to pursue possession or collect pre-sale arrears after the August 19, 2026 closing. The September 9 and October 13 judgments and related entries must be vacated and struck as extrajudicial and void under 28 U.S.C. § 1446(d).

**Count 5 – Due Process Violations and Judicial Conflict**

The September 9, 2026 empty-courtroom markup and the October 13, 2026 ghost hearing conducted by conflicted recalled Judge Walter Gorman, with the participation of Attorney Michael D. Crane, Juliet Collins, at the direction of Attorney Russo, deprived Plaintiffs of notice and opportunity to be heard, in violation of due process.

**Count 6 – Weaponized Lawfare and Deep-Fake Scheme**

Defendants Walter Gorman, Michael D. Crane, Juliet Collins, W. Mark Russo, John Dorsey, and others conspired to manufacture deep fake relocation schemes void defaults and possession orders through ghost hearings, broken continuance agreements, forged or deep-fake orders, and post-removal proceedings in violation of 28 U.S.C. § 1446(d), for the purpose of clearing Plaintiffs from the premises to benefit Perfumania and related interests.

**Count 7 – Equitable Recoupment and Lease Set-Off**

Plaintiffs possess claims and unapplied credits exceeding any alleged delinquency. These must be applied as equitable recoupment, wiping out any claimed back rent and barring a writ of possession. Rental commencement triggers under Lease Provisions 1.05(b) and 1.06(b) never occurred due to the landlord's active facility sabotage, plan rejections, and constructive lockouts. Valid unapplied lease credits and relocation reimbursements exceed any alleged delinquency.

**Count 8 – Material Breach, Constructive Lockout, and Unclean Hands**

The landlord, Receiver, and Attorney John Dorsey materially breached the leases (quiet enjoyment, good faith, and related provisions) through alleged lockouts, relocations to unusable space (including a 350 sq. ft. trash room), and retaliatory conduct. A landlord who excludes a commercial tenant or renders the premises unusable has committed a constructive lockout. The eviction proceedings were manufactured in retaliation for Plaintiffs' exposure of related

transactions and federal claims. Mall management personnel stated that the order came down directly from Russo to clear Plaintiffs out because of the threatened lawsuit.

**Count 9 – Trans-Jurisdictional RICO Conspiracy and Civil Rights Claims ($122,000,000)**
Plaintiffs incorporate the factual nucleus and claims for relief from their First Amended Verified Complaint in D. Mass. No. 1:25-cv-13806 and the Omnibus Opposition thereto.

The coordinated pattern of conduct across the Providence Place Mall receivership, the deep-fake District Court scheme, and related GGP-Natick events supports claims under civil RICO, 42 U.S.C. § 1983, and related theories arising from the same transaction or occurrence. The enterprise unites Paolino, Pyramid, Brookfield Properties, GGP-Natick West L.L.C., GGP-Providence Place LLC, their individual employees, municipal officials, Court-Appointed Receivers W. Mark Russo and John Dorsey, and judicial officers in a single common purpose to unlawfully break leases, seize private property, and strip away valuable municipal assets for preferred inside operators. Plaintiffs seek damages of $122,000,000, together with equitable relief against the named defendants, including Russo, Dorsey, Crane, Collins, Gorman, Stern, Paolino, Congel, Pyramid, and Perfumania.

**VI. PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand:

1. An order enforcing the automatic stay under 11 U.S.C. § 362(a) and restraining all lockout, padlocking, seizure, or possession actions at Units 7518 and 4300;
2. Declaratory relief that the October 13, 2026 extrajudicial default judgments, the September 9, 2026 entries, and all post-removal District Court orders are void ab initio;
3. An immediate order staying all execution, writs of possession, sheriff actions, padlocking, and constructive eviction;
4. Vacation and striking of the void orders;
5. Recognition that any ongoing obligation is limited to post-August 19, 2026 (and post-petition) use and occupancy at the existing lease rates of $1,222 per month (Unit 7518) and $1,800 per month (Unit 4300), with post-petition payments commencing November 12, 2026;
6. Actual damages, costs, attorney's fees, and punitive damages for willful violations of the automatic stay under 11 U.S.C. §§ 362(k) and 105(a);

7. Damages of $122,000,000 on the RICO and civil rights claims;
8. Trial by jury on all matters raised in the instant complaint; and
9. Such other and further relief as justice requires to preserve the estate, enforce the automatic stay, and prevent irreversible destruction of the premises and business.

Dated: October 19, 2026

Respectfully submitted under special appearance and full reservation of federal rights,

/s/ Hitesh (Harry) Harjani
Hitesh (Harry) Harjani, Pro Se
individually and on behalf of Instyle Fragrances LLC
5 Scotch Cap Road
Quaker Hill, CT 06375
860-913-6032
harryharjani@yahoo.com
/s/ Nicholas Fiorillo
Nicholas Fiorillo, Pro Se Assignee
and real party in interest

Certification and Verification

We, Hitesh Harjani and Nicholas Fiorillo certify that we have served this under the rules of Federal Emergency Bankruptcy procedure in hand at the court, also via electronic means. We also verify the statements contain here ~~in~~ are true to the best of our memory and recollection.

/s/Hitesh Harjani

/s/Nicholas Fiorillo